FILED
2022 Sep-27  PM 04:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| JOEY ALLEN CAFFERY, | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | ) **Case No. 5:19-cv-08049-KOB** |
| | )          **5:18-cr-108-KOB-JEO** |
| | ) |
| UNITED STATES OF | ) |
| AMERICA, | ) |
| | ) |
| | ) |
| **Respondent.** | ) |

### MEMORANDUM OPINION

Pursuant to a plea agreement, Joey Allen Caffery pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) on June 18, 2018, and the court sentenced him to 37 months imprisonment on November 29, 2018.  (Cr. Docs. 11 & 21). This case is now before the court on Mr. Caffery's motion to vacate, set aside or correct his conviction and sentence pursuant to 28 U.S.C. § 2255, the Government's response in opposition, and Mr. Caffery's reply.  (Cv. Docs. 1, 10, & 12).[1]

As grounds for habeas relief, Mr. Caffery raises several ineffective assistance of counsel claims surrounding his plea and sentence and involving counsel's alleged failure to consult with him regarding a direct appeal.  He also argues that his conviction is "null and void" after the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019),

---

[1] Documents from Mr. Caffery's criminal trial, case number 5:18-cr-108-KOB-JEO, are designated "Cr. Doc. ___." Documents from Mr. Caffery's § 2255 action, case number 5:19-cv-8049-KOB, are designated "Cv. Doc. ___."

which held that § 922(g) requires that a defendant know of his status as a felon at the time he possessed a firearm.  *See* (Cv. Docs. 1 & 12).   After reviewing Mr. Caffery's motion to vacate and all the filings in this case, the court finds that his habeas claims lack merit. Accordingly, for the reasons below, the court will **DENY** Mr. Caffery's motion to vacate.

## I.      BACKGROUND

In January 2017, the Department of Homeland Security received a tip that criminal activity was occurring at Mr. Caffery's address.  DHS agents spoke with Mr. Caffery's wife Robyn at the residence; she told the agents that Mr. Caffery was a convicted felon and had several guns at the residence.  With Robyn's written consent to search the residence, agents found 8 long guns and 1 handgun in an open safe inside the master bedroom closet.  Robyn told the agents that all the guns belonged to Mr. Caffery.  (Cr. Doc. 11 at 2-3).

After waiving his rights under *Miranda*, Mr. Caffery admitted to agents to "being a convicted felon, to possessing the firearms, and to knowing that he is forbidden to possess them as a convicted felon."  He denied purchasing the guns but stated that Robyn bought them for him.  (Cr. Doc. 11 at 3).

A grand jury indicted Mr. Caffery on two counts: being a felon in possession of the nine firearms found in his master bedroom closet in violation of 18 U.S.C. § 922(g) in Count One, and receiving and possessing a firearm silencer not properly registered to him in violation of 26 U.S.C. § 5861(d) in Count Two.  Mr. Caffery hired attorney Bruce Gardner to represent him in his criminal case.  (Cr. Doc. 1 & docket entry on April 16, 2018).

Pursuant to a negotiated plea agreement, Mr. Caffery pled guilty to being a felon in possession of a firearm in Count One, and the Government agreed to dismiss the possession

of an unregistered firearm silencer in Count Two. (Cr. Doc. 11). He testified at the plea hearing that, after the agents gave him his Miranda rights, he voluntarily confessed to them that he possessed the firearms knowing that he could not possess them as a convicted felon. He testified specifically that the agents made no threats or promises to him and that he made those statements to the agents voluntarily. (Cr. Doc. 30 at 19).

At the sentencing hearing on November 29, 2018, Mr. Caffery testified that he took "full ownership of what's happened," but seemed to argue that he was ignorant of the federal law that prohibited him from possessing a firearm as a felon. Mr. Caffery explained that since 2012 he had been "doing fugitive recovery" and that he possessed the handgun when working to apprehend fugitives prior to the Indictment in this case, but he did not carry the handgun otherwise. He testified that Alabama State Trooper John Odom and Madison Police Officer Aaron Barks, in connection with Mr. Caffery's work apprehending fugitives, asked him "at one point in time" why he "never carried a firearm as opposed to when [he] was just working fugitive recovery." Mr. Caffery testified that he told Trooper Odom about his felony conviction and "they ran him through their systems" and found that he was not prohibited from owning a firearm under *Alabama* law because his felony convictions did not involve "certain elements of violence." (Cr. Doc. 29 at 8-10) (emphasis added). So, Mr. Caffery claimed at the sentencing hearing that he was unsure if he could own a firearm under *federal* law. *Id.*

The court informed Mr. Caffery at the sentencing hearing that the facts that he had his wife purchase the firearms and that he did not apply for a concealed carry permit "belies [his] claim of not knowing that the federal law prohibited [him] from having possession of a

firearm." (Cr. Doc. 29 at 8-10). The court also explained to Mr. Caffery that ignorance of the federal law was no defense to § 922(g). *Id*. at 12.

The court gave Mr. Caffery a three-level reduction for acceptance of responsibility and sentenced Mr. Caffery to 37 months imprisonment—the low end of the Guidelines range—with a 36-month term of supervised release. And the court granted the Government's motion to dismiss Count Two of the Indictment. (Cr. Docs. 1, 11, 19, 21, & 29).

The BOP released Mr. Caffery from custody on November 17, 2021, but he is currently serving his 36-month term of supervised release. So, this habeas matter is ripe for resolution. *See Aguero v. United States*, 580 F. App'x 748, 749 n.1 (11th Cir. 2014) (citing *Reed v. United States*, 471 F.2d 721, 722 (5th Cir. 1973)) (a § 2255 motion is not moot if the movant is imprisoned at the time of the original filing but released from prison before the court decides the motion).

## II.    DISCUSSION

Mr. Caffery argues as grounds for his § 2255 motion that his counsel was ineffective regarding his guilty plea and sentence and that counsel failed to consult with him regarding a potential appeal. Mr. Caffery also claims that his conviction is "null and void" based on the *Rehaif* decision. The court will discuss in turn why all of Mr. Caffery's claims fail.

### A.    Ineffective Assistance of Counsel

Mr. Caffery has failed to meet the standard for ineffective assistance of counsel under *Strickland* for any of his Sixth Amendment claims. S*ee Strickland v. Washington*, 466 U.S. 668, 684 (1984). To prevail on a claim of ineffective assistance of counsel, Mr.

4

Caffery must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness, *and* (2) that he suffered prejudice because of that deficient performance. *See Strickland*, 466 U.S. at 684-91.  Mr. Caffery has the burden to prove *both* prongs of *Strickland* to demonstrate ineffective assistance of counsel, and the court "'need not address both prongs if the petition has made an insufficient showing on one of them.'" *See Bishop v. Warden, GDCP*, 726 F.3d 1243, 1254 (11th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697).

Deficient performance is "'representation [that] f[alls] below an objective standard of reasonableness.'" *Hardwick v. Sec'y, Fla. Dep't of Corr.*, 803 F.3d 541, 551 (11th Cir. 2015) (citing *Strickland*, 466 U.S. at 688).  Counsel is presumed to have acted reasonably. *Strickland*, 466 U.S. at 690.  A reviewing court "must indulge a *strong presumption* that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (emphasis added).  Because of this strong presumption, a movant "'must establish that no competent counsel would have taken the [challenged] action.'" *Khan v. United States*, 928 F.3d 1264, 1272 (11th Cir. 2019) (quoting *Chandler v. United States*, 218 F.3d 1305, 1314-15 (11th Cir. 2000) (en banc) and citing *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005)).

Mr. Caffery must also show that counsel's deficient performance prejudiced him. Mr. Caffery can show prejudice if "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.  Mr. Caffery must show more than "the error had some *conceivable* effect on the outcome of the proceeding." *See Strickland*, 466 U.S. at 693.

5

### *Failure to Conduct a Pretrial Investigation*

Mr. Caffery argues that his counsel was ineffective for failing to "conduct an adequate and independent pretrial investigation" prior to his plea hearing.  He claims that Mr. Gardner was ineffective because he "failed to research the case law or investigate the facts" of his case and failed to file a motion for a "private investigator to independently investigate Caffery's case." (Cv. Doc. 1 at 12-13).  Mr. Caffery claims that the law required Mr. Gardner to conduct a "reasonable substantial, independent investigation" into whether Mr. Caffery *owned* the firearms and whether he was "100 % certain that he was not allowed to have a firearm." (Cv. Doc. 1 at 15).  He claims that Mr. Gardner's failure to conduct the pretrial investigation into these matters constitutes ineffective assistance of counsel. (Cv. Doc. 1 at 13) (internal citations omitted).  But Mr. Caffery's arguments fail.

The Government submitted no affidavit from Mr. Caffery's counsel Bruce Gardner regarding whether he conducted any type of pretrial investigation into these matters.  But an affidavit from counsel is not necessary given the clear record in this case.  Even *assuming* that Mr. Caffery's counsel decided to conduct no formal pretrial investigation into the *ownership* of the firearms or into whether Mr. Caffery knew the federal law prohibited him from possessing a firearm, those decisions were reasonable.

Counsel has a "duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations *unnecessary*."  *Strickland*, 466 U.S. at 690-91.  Here, given the circumstances of this case, Mr. Gardner's failure was reasonable because a pretrial investigation into these matters was unnecessary.

Mr. Caffery claims that Mr. Gardner was deficient for failing to investigate, discover,

6

and research law regarding the fact that Mr. Caffery only *owned* six of the nine firearms found in a safe inside his master bedroom closet, i.e., he did not *own* three of the nine firearms. But whether Mr. Caffery *owned* those firearms had no bearing on whether he was guilty of *possessing* them as a felon under 18 U.S.C. § 922(g).

For a conviction under § 922(g) prior to *Rehaif* and at the time of Mr. Caffery's conviction and sentence, the Government had to prove that the defendant knowingly *possessed* a firearm or ammunition; that before *possessing* the firearm, the defendant had been convicted of a crime punishable by imprisonment for more than one year; and that the firearm had traveled in or affected interstate commerce. *See United States v. Palma*, 511 F.3d 1311, 1315 (11th Cir. 2008). After *Rehaif*, the Government also had to prove that the defendant knew at the time he *possessed* the firearm that he had been convicted of a felony. *See Rehaif*, 139 S. Ct. at 2200. Nothing in § 922(g) either before or after *Rehaif* or in the binding case law requires that Mr. Caffery *own* the firearms to possess them. The law focuses on *possession*, not *ownership* of those firearms.

And § 922(g) requires that Mr. Caffery possess only *one* firearm with the requisite knowledge under the statute. So, whether Mr. Caffery *owned* only six *or* all nine has no bearing on whether he *possessed* at least *one* of the nine firearms and he is guilty as a felon in possession of a firearm. And, in fact, Mr. Caffery's argument in this case that he owned at least six of the nine firearms underscores that he possessed at least those six firearms.

And both before and after *Rehaif*, possession of a firearm for purposes of § 922(g) can be actual or *constructive*. *United States v. Green*, 873 F.3d 846, 852 (11th Cir. 2017). A defendant constructively possesses a firearm if he "'(1) is aware of or knows of the

firearm's or ammunition's presence and (2) has the ability and intent to exercise control over that firearm or ammunition.'" *United States v. Kelly*, No. 21-10351, 2021 WL 6143554, at *3 (11th Cir. Dec. 30, 2021) (citing *Green*, 873 F.3d at 852). Here, the agents found the firearms in a safe in Mr. Caffery's master bedroom closet, where a jury could find that Mr. Caffery had at least joint constructive possession over the firearms. Again, *ownership* of the firearms has nothing to do with whether Mr. Caffery constructively *possessed* the firearms. So, Mr. Gardner's alleged failure to investigate an irrelevant matter like ownership of the nine firearms was reasonable under the circumstances of this case.

And Mr. Gardner knew that Mr. Caffery had *confessed* to agents that he did not purchase the firearms but *possessed* of all the firearms in the safe. At his plea hearing on June 18, 2018, Mr. Caffery agreed that the facts about his confession contained in his plea agreement were "substantially correct" and that those facts were "true." (Cr. Doc. 30 at 17-19). A strong presumption exists that "statements made under a plea colloquy are true." *United States v. Medlock*, 12 F. 3d 185, 187 (11th Cir. 1994).

That factual summary in his plea agreement indicates that, Mr. Caffery, with full knowledge of his rights pursuant to *Miranda*, confessed to Department of Homeland Security agents that he *possessed* all nine firearms seized from the safe in his master bedroom closet. Mr. Caffery denied to the agents that he *purchased* the firearms and stated that his "wife had bought them *for him*." But he admitted to the agents that he *possessed* the firearms "knowing that he is forbidden to possess them as a convicted felon." (Cr. Doc. 11 at 3 & Cr. Doc. 30 at 17-19) (emphasis added).

And Mr. Caffery has not challenged his confession to agents that he *possessed* all the

firearms.  Mr. Caffery claimed that the agent "kept trying to coax [him] into saying he knew

he wasn't supposed to have one firearm."  (Cr. Doc. 1 at 15). But Mr. Caffery never denies

making the statement to agents that he *possessed* all nine firearms.  In fact, Mr. Caffery

never denies that he in fact constructively possessed those firearms.  And Mr. Caffery admits

that Mr. Gardner explained to him that Mr. Caffery had little to no chance of succeeding at

trial because of his confession that he *possessed* the firearms, which ultimately led to Mr.

Caffery accepting a plea deal.  *See* (Cv. Doc. 1 at 12).  And Mr. Caffery never argues that his

confession would have been inadmissible had he rejected the plea agreement and proceeded

to trial.

Considering Mr. Caffery's voluntary confession regarding possession of all nine

firearms and the fact that ownership was irrelevant to a conviction for being a felon in

possession of a firearm before and after *Rehaif*, Mr. Gardner was not unreasonable for failing

to investigate, discover, and research law regarding the *ownership* of the firearms.  The court

agrees with the Government that "counsel is not deficient in failing to investigate a fact that

would have had no impact on the outcome of the case."  *See* (Cv. Doc. 10 at 10).

And Mr. Caffery cannot show prejudice on this claim.  He asserts that a pretrial

investigation would have shown that three of the nine firearms "were not his," i.e., six of the

nine firearms "were his."  He claims that had he owned only three to seven firearms, his

offense level would have increased by two, instead of by four because the court attributed

ownership of all nine firearms to him.  *See* (Cv. Doc. 1 at 23).  Mr. Caffery argues that he

"would not have pleaded guilty to a factual basis that included all nine guns" had Mr.

Gardner explained this significance to him. (Cv. Doc. 1 at 14).

But again, Mr. Caffery's *ownership* of the guns was totally irrelevant to the application of the four-level increase in his offense level under U.S.S.G. § 2K2.1(b)(1)(B). That section provides that the court must increase the offense level by four if the offense "*involved*" eight to twenty-four firearms.  U.S.S.G. § 2K2.1(b)(1)(B).  Mr. Caffery confessed to possessing nine firearms and that possession meant his offense "involved" nine firearms, making the four-level increase proper.

So, the fact that Mr. Gardner failed to investigate and discover that Mr. Caffery owned only six of the firearms would have no bearing on whether the court would have increased his offense level by four under U.S.S.G. § 2K2.1(b)(1)(B).  Mr. Caffery has failed to show how his alleged lack of ownership of the guns would have any effect on the court's application of § 2K2.1(b)(1)(B) at sentencing because it would not.  He cannot show a reasonable probability that his conviction or sentence would have been any different even if he *owned* only six of those firearms, especially where he confessed to *possessing* all nine of them.

And given his voluntary confession and the Government's agreement to dismiss Count Two as part of the plea agreement, Mr. Caffery cannot show a reasonable probability that he would have gone to trial had Mr. Gardner conducted a pretrial investigation regarding the ownership of the gun.  Presumably, Mr. Gardner would have explained to Mr. Caffery that ownership of the guns had no bearing on his conviction or sentence and that the Government had more than enough evidence to convict him at trial. And had Mr. Caffery decided to go to trial, the jury likely would have convicted him on *both* counts in the Indictment based on his confession and his sentence could have been much longer.  So, Mr.

Caffery cannot show deficient performance or prejudice for Mr. Gardner's failure to investigate the ownership of the firearms.

Mr. Caffery also argues that Mr. Gardner was deficient for failing to investigate that Mr. Caffery was "not 100% sure that he belonged to the relevant category of persons barred from possessing a firearm." He claims that because of the "conflicting state and federal laws in Alabama," he was "not 100 % certain that he was not allowed to have a firearm." He seems to argue that Mr. Gardner was ineffective for failing to investigate and discover whether Mr. Caffery was "aware that federally[] he could not *own* a firearm." (Cv. Doc. 1 at 15) (emphasis added). Again that argument fails.

As discussed above, whether Mr. Caffery knew that federal law prohibited him from *owning* a firearm is not material to whether he violated § 922(g). To the extent that Mr. Caffery argues that he was ignorant of the federal law that prohibiting him from possessing a firearm as a convicted felon, the court has already explained to Mr. Caffery at his sentencing hearing that his ignorance of the law is no defense to a conviction under § 922(g).

"*Rehaif* did not alter the longstanding principle that where a defendant has the requisite mental state in respect to the elements of the crime but claims to be unaware of the existence of the statue proscribing his conduct, such ignorance of the law (or a mistake of the law) is no excuse." *United States v. Paul*, 826 F. App'x 809, 813 n.2 (11th Cir. 2020) (citing *Rehaif*, 139 S. Ct. at 2198). Under *Rehaif*, "that a defendant does not recognize that he personally is prohibited from possessing a firearm under federal law is no defense if he knows he has a particular status and that status happens to be one prohibited by § 922(g) from possessing a firearm." *United States v. Johnson*, 981 F.3d 1171, 1189 (11th Cir. 2020).

So, Mr. Caffery's alleged ignorance of the federal law prohibiting him from possessing a firearm as a felon does not help his ineffective assistance of counsel claim.

And the record shows that Mr. Caffery *knew* of his status as a felon—the relevant required factual element.  The court points out that Mr. Caffery never claims that he did *not* know that he was a convicted felon at the time he possessed the firearms.  Mr. Caffery confessed to the agents that he possessed the firearms "*knowing* that he is forbidden to possess them *as a convicted felon*."  (Cr. Doc. 11 at 3).  That statement implies that Mr. Caffery *knew* of his status as a convicted felon when he possessed the firearms.

Mr. Caffery also testified at the sentencing hearing that, in connection with carrying a firearm in his fugitive recovery work *before* the Indictment in this case, he told Trooper Odom that he was a convicted felon.  So, the record shows that Mr. Caffery knew of his status as a convicted felon when he admittedly possessed the handgun during his fugitive recovery work.  So, the record shows that Mr. Caffery knew that he constructively possessed the firearms and knew that he was a felon at the time he possessed them.

And Mr. Caffery's alleged ignorance of the federal law does not equate to deficient performance on Mr. Gardner's part.  So, Mr. Gardner was not deficient for failing to conduct an unnecessary investigation into whether Mr. Caffery was "100 % sure" that the federal law prohibited him from possessing a firearm.

And even if Mr. Caffery could somehow show deficient performance on this claim, he cannot show prejudice.  He has failed to show a reasonable probability that the outcome of his conviction or sentence would have been different had Mr. Gardner investigated whether Mr. Caffery knew the federal law prohibited him from possessing a firearm because

12

that knowledge was immaterial to a conviction under § 922(g).  Presumably, Mr. Gardner would have explained to Mr. Caffery that ignorance of the federal law prohibiting him from possessing a firearm was not a defense, and Mr. Caffery likely would have proceeded with his plea of guilty.

And Mr. Caffery cannot show a reasonable probability that he would have gone to trial had Mr. Gardner investigated this matter.  As explained above, the record shows that Mr. Caffery voluntarily confessed that he possessed the firearms; knew he could not possess them *as a convicted felon*; had his wife buy the firearms for him; did not apply for a concealed carry permit; and told Trooper Odom prior to the Indictment in this case that Mr. Caffery was a convicted felon.  Given these facts, Mr. Caffery cannot show that an investigation into this matter would have led him to take his chances at a trial, especially when the Government was willing to dismiss Count Two of the Indictment and lessen his potential sentence.  So, Mr. Caffery has failed to show deficient performance or prejudice on this claim.

*Failure to Explain the Sentencing Guidelines or File Substantive Objections to the PSR*

Mr. Caffery also claims that Mr. Gardner provided ineffective assistance of counsel by failing to explain the Sentencing Guidelines to him and failing to file substantive objections to the four-level enhancement for the involvement of nine firearms and to the recitation of facts contained in the Pre-sentence Report.  But these claims fail.

The record belies Mr. Caffery's claim that Mr. Gardner failed to explain the Sentencing Guidelines to him.  Mr. Caffery testified under oath at the plea hearing that he

had "sufficient opportunity and time to discuss the sentencing guidelines with Mr. Gardner" and that Mr. Caffery had no questions about them.  (Cr. Doc. 30 at 13).  The court gives Mr. Caffery's statement made under oath great weight and finds that Mr. Gardner was not deficient in this matter.

Mr. Caffery also argues that Mr. Gardner's performance was deficient for failing to object to the four-level enhancement in the PSR based on the involvement of nine firearms in this case.  As discussed previously, the fact that Mr. Caffery allegedly owned only six of the nine firearms would have no bearing on whether the court would have increased his offense level by four under U.S.S.G. § 2K2.1(b)(1)(B) because he possessed all nine firearms.  So, Mr. Gardner was not deficient for failing to make an objection to the PSR that had no merit. *See Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013) (counsel was not deficient for his decision to "'forego a claim that was a loser under the then-current state of the law.'") (quoting *Jones v. United States*, 224 F.3d 1251, 1257 (11th Cir. 2000)).

And Mr. Caffery has failed to show how an objection to this provision in the PSR or his alleged lack of ownership of the guns would have any effect on the court's application of § 2K2.1(b)(1)(B) at sentencing.  He cannot show a reasonable probability that his conviction or sentence would have been any different even if Mr. Gardner had objected to the four-level enhancement in the PSR.  So, his claim fails.

Mr. Caffery also argues that Mr. Gardner was ineffective for failing to object to the "recitation of facts contained in the PSR."  Specifically, Mr. Caffery argues that Mr. Gardner "was not able to prove Caffery was coaxed to say that he knows he is a felon barred from possessing a firearm."  Mr. Caffery seems to argue that Mr. Gardener should have objected to any statements in his PSR regarding his confession that he knowingly possessed the

14

firearms as a convicted felon. But that claim lacks merit.

As previously discussed, Mr. Caffery testified at the plea hearing that the facts surrounding his confession contained in his Plea Agreement were "substantially correct." The court explained to Mr. Caffery at the plea hearing that the Probation Office would use those facts "in writing the presentence investigation report" and urged him to tell the court if he disagreed with any of those facts. After the Assistant United States Attorney read the facts regarding Mr. Caffery's confession into the record at the plea hearing, Mr. Caffery testified that those facts from his confession to the agents were true. Mr. Caffery also testified at the plea hearing that no one threatened or coerced him to confess to possessing the firearms as a convicted felon. (Cr. Doc. 30 at 16-19).

And the factual basis contained in the Plea Agreement was the same factual basis contained in the PSR. Mr. Caffery claims that Mr. Gardner was deficient for failing to object to these facts, but Mr. Caffery offers no alternative facts to counter the facts that he testified at the plea hearing were true. In fact, he never claims that he did not tell the agents that he knowingly possessed the firearms knowing that he could not possess them as a convicted felon. So, Mr. Gardner was not deficient for failing to object to facts in the PSR that Mr. Caffery admitted under oath he voluntarily made and were substantially correct.

Mr. Caffery has failed to show a reasonable probability that, had Mr. Gardner objected to these facts in the PSR, the court would have sustained those objections. For the reasons explained above, the court would have found at the sentencing hearing that Mr. Caffery voluntarily confessed to agents that he possessed the nine firearms; that he testified under oath at the plea hearing that the statements in his confession to agents were true; and

that Mr. Caffery's conduct involved nine firearms.  So, he cannot show deficient performance or prejudice for Mr. Gardner's failure to object to substantially true facts in the PSR.

*Failure to Negotiate a More Favorable Plea Agreement*

Mr. Caffery also argues that his counsel was deficient for "failing to attempt to negotiate a more favorable plea agreement."  He argues that Mr. Gardner failed to "review the advantages and disadvantages of the plea offer" with him and just "advised [him] to plead guilty."  Mr. Caffery claims that the plea agreement "was skewed in the favor of the government and did not have any benefit for Caffery."  (Cv. Doc. 1 at 17-22).  But Mr. Caffery's argument fails on the record.

First, at the plea hearing, Mr. Caffery testified under oath that, before he signed the plea agreement, he had a sufficient opportunity to discuss the plea agreement with Mr. Gardner.  Mr. Caffery also testified at the plea hearing that he did not have any "questions about the meaning of the agreement, how it might operate, or what affect it would have on [him] that [Mr. Gardner] was not able to answer to [Mr. Caffery's] satisfaction."  (Cr. Doc. 30 at 8).  So, the record belies Mr. Caffery's claim that Mr. Gardner did not discuss the plea agreement with him.

And Mr. Caffery fails to identify what Mr. Gardner could have done to secure a "more favorable plea agreement."  Mr. Caffery's claim that Mr. Gardner negotiated a plea agreement that had no benefit for Mr. Caffery is wrong.  Even though the evidence in this case was *overwhelming* against Mr. Caffery given his voluntary confession and the location of the firearms in a safe in his master bedroom closet, Mr. Gardner negotiated with the

16

Government for the dismissal of Count Two, which resulted in a much lower sentence for

Mr. Caffery.  According to the PSR, had the Government not dismissed Count Two and a

jury found him guilty on that count, he "would have been facing up to an additional 10-year

custodial sentence."  (Cr. Doc. 19 at 24) (under "Impact of Plea Agreement" section).

And Mr. Gardner also negotiated for the Government to recommend a three-level

reduction for Mr. Caffery's acceptance of responsibility and a sentence at the low end of the

guidelines range.  Those terms in the agreement greatly benefited Mr. Caffery and lessened

his potential sentence.  So, Mr. Caffery has failed to show that Mr. Gardner's performance

was deficient in negotiating the terms of Mr. Caffery's plea agreement.

Even if Mr. Caffery could somehow show deficient performance on this issue, he

cannot show prejudice.  In fact, Mr. Caffery fails to identify what "more favorable" deal Mr.

Gardner could have negotiated with the Government.  Mr. Caffery cannot show a reasonable

probability that his plea deal would have been "more favorable" to him but for Mr. Gardner's

alleged deficient performance.  His conclusory statement that his plea deal would have been

"more favorable" is insufficient to show either deficient performance or prejudice on this

claim.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that conclusory

statements, unsupported by specific facts or the record, are insufficient to state a claim for

ineffective assistance of counsel).  So, this claim fails.

*Failure to Consult about an Appeal*

Mr. Caffery argues that his counsel was ineffective for failing to "consult [with him]

regarding his direct appeal."  Curiously, Mr. Caffery also states that the "record fails to

conclusively establish that Caffery did not instruct Gardner to file an appeal."  (Cv. Doc. 1 at

26).  But Mr. Caffery never alleges that he in fact instructed Mr. Gardner to file an appeal and Mr. Gardner failed to do so. And Mr. Caffery gives no facts in his § 2255 motion or his reply to the Government's response to support that he told Mr. Gardner to file a direct appeal.  So, the court construes this claim as a failure to consult regarding an appeal and *not* a failure to file an appeal as instructed.

No bright-line rule exists requiring counsel in every case to consult with a defendant regarding an appeal after his sentencing.  *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).  But counsel has a constitutional duty under the Sixth Amendment to consult with a defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  *Flores-Ortega*, 528 U.S. at 480.

To determine whether counsel had a duty to consult with the defendant about an appeal, the court must consider all the information that counsel knew or should have known.  *Id*. at 480.  The Court in *Flores-Ortega* also listed three possible factors for courts to consider when analyzing the reasonableness of an attorney's failure to discuss the matter of an appeal with his client: (a) "whether the conviction follows a trial or guilty plea . . . [b] whether the defendant received the sentence bargained for as part of the plea and [c] whether the plea expressly reserved or waived some or all appeal rights." *Id.* at 480.  The factor regarding whether the defendant pled guilty is "highly relevant" because "a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings."  *Id*. at 480.

*Assuming* that Mr. Caffery's allegation on this claim is true, all three factors weigh in

18

favor of the reasonableness of Mr. Gardner's failure to consult with Mr. Caffery about an appeal after his sentencing. Mr. Caffery entered a plea agreement, in which the Government agreed to dismiss Count Two if Mr. Caffery pled guilty to Count One and agreed to recommend a sentence at the low end of the guidelines range. Mr. Caffery received the exact low-end guideline range sentence that he bargained for in his plea agreement. And Mr. Caffery's guilty plea and sentence at the low end of his guideline range reasonably would lead Mr. Gardner to believe that Mr. Caffery thought the judicial proceedings were over. So, Mr. Gardner would have no reason to think that Mr. Caffery would want to appeal.

And Mr. Caffery agreed in the plea agreement to waive any appeal or post-conviction proceeding rights *except* his right to contest "(a) any sentence imposed in excess of the applicable statutory maximum sentence(s); (b) any sentence imposed in excess of the guideline sentencing range determined by the Court at the time sentence is imposed; (c) or ineffective assistance of counsel." (Cr. Doc. 11 at 6). Because the court sentenced Mr. Caffery at the low end of his guideline range, neither of the appeal waiver exceptions in (a) or (b) apply. And Mr. Caffery properly raised his ineffective assistance of counsel claims in this collateral habeas proceeding.

Also, the court agrees with the Government that the record establishes that Mr. Gardner discussed potential *future* appeal rights with Mr. Caffery before he waived his appeal rights in the plea agreement. *See* (Cv. Doc. 10 at 16). During the plea colloquy, Mr. Caffery acknowledged that he was giving up "some or all of [his] appeal rights" and that he independently made that decision "after discussing it with [Mr. Gardner]." (Cr. Doc. 30 at 9). So, prior to his sentencing, Mr. Gardner explained Mr. Caffery's appeal rights to him and the consequences of waiving those appeal rights.

19

And the record contradicts Mr. Caffery's allegation that his appeal waiver was not knowing or voluntary.  *See* (Cv. Doc. 12 at 8).  During the plea hearing, the court thoroughly explained the consequences of the waiver of his appeal rights, and Mr. Caffery testified that he understood that wavier and wanted to *voluntarily* give up his appeal rights.  (Cr. Doc. 30 at 8-9).  So, the record shows that Mr. Caffery chose to voluntarily waive those appeal rights with full knowledge of the consequences of that waiver.

And Mr. Caffery does not allege any facts to show that he demonstrated an interest in appealing his sentence to Mr. Gardner after the sentencing hearing. And given Mr. Caffery's waiver of his appellate rights, no basis would exist for Mr. Gardner to think that Mr. Caffery would want to file a direct appeal.  Under the facts of this case, no rational defendant would want to appeal.  Because Mr. Gardner's failure to consult with Mr. Caffery about an appeal after his sentencing hearing was reasonable, Mr. Caffery has failed to show deficient performance on this claim.

Mr. Caffery also fails to show prejudice on this claim.  To show prejudice on a claim for failure to consult regarding an appeal, Mr. Caffery must demonstrate a reasonable probability that, "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *See Flores-Ortega*, 528 U.S. at 484.  Here, Mr. Caffery conclusively states that he was "unhappy" with his sentence and "wanted to appeal." But that one sentence does not demonstrate that he in fact would have filed a timely appeal had Mr. Gardner consulted with him after the sentencing about an appeal.

As discussed above, Mr. Gardner had already consulted with Mr. Caffery about waiving his appeal rights.  And had Mr. Gardner consulted with Mr. Caffery after the sentencing about an appeal, Mr. Gardner would have again explained the waiver and lack of

any non-frivolous grounds for an appeal.  So, Mr. Caffery cannot demonstrate that but for that

consultation, he would have filed a direct appeal when he waived his right to do so.

     And the court at the sentencing hearing thoroughly explained that appeal waiver to Mr.

Caffery but also explained that he had fourteen days to appeal if he chose to do so.  (Cr. Doc.

29 at 16).  So, even without Mr. Gardner consulting with him about an appeal after the

sentencing, Mr. Caffery knew that he had fourteen days to file an appeal.   And he does not

allege that he reached out to Mr. Gardner during those fourteen days indicating that he wanted

to appeal.  Given Mr. Caffery's voluntary appeal waiver, voluntary confession, and the

dismissal of Count Two which could have resulted in a much higher sentence, Mr. Caffery

cannot show a reasonable probability that he would have appealed had Mr. Gardner consulted

with him after sentencing about an appeal.

     So, the court finds that Mr. Caffery has failed to show any deficient performance or

prejudice as required by *Strickland* and *all* his ineffective assistance of counsel claims fail.

### B.    *Rehaif* Ground

     Mr. Caffery also argues that, based on the Supreme Court's ruling in *Rehaif*, his

conviction is "null and void because the government was not able to prove both that [he]

knew he possessed a firearm and that he knew he belonged to the relevant category of

persons barred from possessing a firearm."  (Cv. Doc. 1 at 26).  The Government argues that

this *Rehaif* claim is procedurally defaulted because he did not previously raise this claim on

direct appeal.  This court agrees.

     Generally, unless a defendant challenges a criminal conviction or sentence on direct

appeal, he is barred from raising that claim in a habeas proceeding.  *Granda v. United States*,

990 F.3d 1272, 1286 (11th Cir. 2021) (internal quotations omitted).  Claims that are

procedurally defaulted cannot succeed on collateral review unless the defendant can "(1) show cause to excuse the default *and* actual prejudice from the claimed error, or (2) show that he is actually innocent of the conviction. *Granda*, 990 F.3d at 1286; s*ee also Carlyle v. United States*, 836 F. App'x 780 (11th Cir. 2020) (holding that a *Rehaif* defect is not jurisdictional and applying the procedural default rule to a *Rehaif* claim in a § 2255 motion based on an alleged involuntary guilty plea).

The "novelty of a claim may be cause to excuse a procedural default." A claim is "truly novel" when "its legal basis [was] not reasonably available to counsel." *United States v. Bane*, 948 F.3d 1290, 1297 (11th Cir. 2020). But a claim is *not* so novel when counsel chose "not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel." *Bane*, 948 F.3d at 1297.

Mr. Caffery argues novelty as cause to excuse his procedural default because the court sentenced him seven months *before* the Supreme Court decided *Rehaif*; so, Mr. Caffery claims he could not have made his *Rehaif* claim on direct appeal. He also argues that "his counsel failed to file a notice of appeal even though Caffery wanted to appeal his case." (Cv. Doc. 12 at 10).

The court has already discussed that, based on Mr. Caffery's confession and appeal waiver in his plea agreement, Mr. Gardner had no reasonable basis to believe that Mr. Caffery wanted to file a direct appeal. And, although the Supreme Court decided *Rehaif after* Mr. Caffery's conviction and sentence became final, a "*Rehaif* [claim] was not 'truly novel' in the sense necessary to excuse procedural default" for failing to raise the claim on direct appeal. *See United States v. Innocent*, 977 F.3d 1077, 1084 (11th Cir. 2020). The

22

legal question decided in *Rehaif* "has been thoroughly and repeatedly litigated in the court of appeals for decades" and does not qualify under the novelty exception as cause to overcome procedural default.  *McGee v. United States*, 2:19-cv-8035-RDP, 2022 WL 2705238 *3 (N.D. Ala. July 12, 2022) (internal quotations and citations omitted).  So, Mr. Caffery cannot show cause for his failure to raise his *Rehaif* claim in a direct appeal.

Even if Mr. Caffery could somehow show cause to excuse his procedural default on this claim, he cannot show *actual prejudice*.  To show actual prejudice to overcome procedural default, Mr. Caffery must show that the "error worked to his 'actual and substantive disadvantage,' not merely 'the possibility of prejudice.'"  *Carlyle*, 836 F. App'x at 783 (quoting *Bane*, 948 F.3d at 1297).  The record in this case contains no evidence of actual prejudice to overcome his Mr. Caffery's procedural default on this claim.

In fact, the record contains sufficient evidence to find that Mr. Caffery had knowledge of his status as a felon under § 922(g)(1) at the time he possessed the firearms. The Government's obligation to prove that Mr. Caffery knew that he was a felon at the time he possessed the firearms is not "burdensome" and "may be inferred from circumstantial evidence."  *See Carlyle*, 836 F. App'x at 783 (citing *Rehaif*, 139 S. Ct. at 2198).  Here, the record contains sufficient evidence to establish that knowledge.

As previously discussed regarding Mr. Caffery's ineffective assistance of counsel claim, he admitted to the agents that he *possessed* the firearms "*knowing* that he is forbidden to possess them *as a convicted felon*." (Cr. Doc. 11 at 3 & Cr. Doc. 30 at 17-19).  That statement in his confession implies that he knew he was a convicted felon when he possessed the firearms.  Moreover, his statement to the agents that his wife bought the firearms for him

implies that he knew he could not purchase those guns himself because he was a convicted felon. *See* (Cr. Doc. 11 at 3). In addition to Mr. Caffery's confession, his testimony at the sentencing hearing that he told Trooper Odom that he was a convicted felon prior to the conduct giving rise to the Indictment in this case supports that Mr. Caffery *knew* of his status as a convicted *felon* at the time he possessed the firearms in this case. And, interestingly, Mr. Caffery never argues that he did *not* know that he was a convicted felon at the time he possessed the firearms.

Based on the record in this case, the Government would have more than enough evidence to show that Mr. Caffery knew that he was a felon when he possessed the firearms in this case. Had the court informed Mr. Caffery during his plea hearing that the Government needed to prove the knowledge-of-status element, the record supports that the Government would have been able to make that showing. And the record "contains no evidence that [Mr. Caffery] would have decided not to plead guilty in light of that circumstance." *See Carlyle*, 836 F. App'x at 783. So, Mr. Caffery cannot show actual prejudice to overcome his procedural default on this issue.

Mr. Caffery also argues that his actual innocence excuses his procedural default. The actual innocence exception is "exceedingly narrow and reserved only for extraordinary cases." *McKay v. United States*, 657 F.3d 1190, 1198-99 (11th Cir. 2011). Actual innocence is "more than mere legal insufficiency; it means factual innocence." McKay, 657 F.3d at 1197. To prove actual innocence from a § 922(g) conviction after *Rehaif*, Mr. Caffery must show that he had no knowledge that he had been convicted of a felony at the time he possessed a firearm. *See McGee*, 2022 WL 2705238 * 4. Mr. Caffery cannot make this

24

showing.

Mr. Caffery has failed to demonstrate that he did not have knowledge of his status as a felon at the time he possessed the firearms.  Again, Mr. Caffery never alleges that he did not know that he was a felon at the time he possessed the firearms.  And for the reasons already discussed above, the record shows that Mr. Caffery knew of his felon status when he possessed the firearms listed in the Indictment.

The Indictment and plea agreement indicate that Mr. Caffery had three prior felony convictions for "Burglary, Grand Theft, and Escape," and Mr. Caffery admitted under oath at the plea hearing that he had "previously been convicted" of the felonies listed in the Indictment.  (Cr. Docs. 1, 11, 30).  "Most people convicted of a felony know that they are felons," especially when they have multiple felony convictions.  *Innocent*, 977 F.3d at 1082. So, based on the record in this case, Mr. Caffery cannot show that he is actually innocent in this case to excuse his procedural default.

Because Mr. Caffery cannot show both cause and actual prejudice or actual innocence to overcome procedural default, this claim fails.

The court is not required to hold an evidentiary hearing in a § 2255 proceeding "where the files and records of the case conclusively show that the movant is not entitled to relief." *Diaz v. United States*, 799 F. App'x 685, 690 (11th Cir. 2020) (citing 28 U.S.C. § 2255(b).  For all the reasons explained above, the record belies Mr. Caffery's claims, and he has failed to allege any facts that, if true, would entitle him to relief.  So, the court finds that an evidentiary hearing is not warranted in his case.

III.    **CONCLUSION**

For all the reasons above, Mr. Caffery's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 lacks merit and no hearing on this motion is warranted. Therefore, the court finds that Mr. Caffery's motion should be **DENIED**.

The court will enter a separate Final Order.

**DONE** and **ORDERED** this 27th day of September, 2022.

_Karon O. Bowdre_
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

26